IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RAME GARA, #M-03053,           )
                               )
         Plaintiff,            )
                               )
vs.                            )     CASE NO. 10-cv-769-MJR
                               )
RANDY DAVIS, *et al.,*         )
                               )
         Defendants.           )

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Rame Gara, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a six-year sentence for aggravated battery with a firearm, and two years for aggravated unlawful use of a weapon. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff claims that various prison officials (and a non-prison doctor) were deliberately indifferent to his medical needs, by failing to treat his injured knee. As a result of the alleged lack of treatment, Plaintiff has suffered ongoing pain for over eighteen months. Plaintiff seriously hurt his knee in early May, 2009, while playing soccer in the prison yard. He was carried back into the building by two other inmates, in pain and unable to walk on his own. He requested Defendant Kelly (a correctional officer) to allow him to go to the Health Care Unit, but Defendant Kelly instead sent Plaintiff back to his cell. Plaintiff put in a sick call request, and was seen three days

later by Defendant Peek, an LPN. Plaintiff told her he was in extreme pain, and showed her his badly swollen knee. Defendant Peek gave Plaintiff a bag to use for an ice pack, but did nothing else.

Three weeks later, Plaintiff saw Defendant Dr. Obadina, who examined him, ordered an x-ray, gave him pain pills, and issued him a low bunk/low gallery permit. Defendant Obadina took Plaintiff's crutches away after getting the x-ray results; he also refused to order an MRI.

Almost a year after the injury, in April, 2010, Plaintiff underwent an MRI test. The results showed osteoarthritis, fluid, and swelling of the kneecap; a small tear of the medial meniscus; and a probable tear of the anterior cruciate ligament. Defendant Dr. Wahl put Plaintiff into physical therapy. Defendant Dr. Gary, an employee of Memorial Hospital of Carbondale, recommended a knee immobilizing device, but unnamed security staff (who are not listed as defendants) turned down that request.

Plaintiff also claims that Defendant Wexford Health Sources, the contracted provider of medical care for the prison and the employer of Defendants Peek, Obadina and Wahl, maintains a custom, policy and practice of failing to provide necessary treatment to inmates, fails to train its agents, and fails to implement appropriate treatment protocols.

Finally, Plaintiff complains that Defendant Davis, the Pinckneyville warden, caused him to be denied medical care by denying Plaintiff's emergency grievances filed in April and May, 2010.

Plaintiff seeks an injunction ordering the defendants to provide medical treatment, compensatory damages, and a transfer to a different penal institution.

**Discussion**

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition

that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need. *Id.*

Plaintiff has described a condition that meets several of the criteria described in *Gutierrez*. The seriousness of his initial injury was obvious to a lay person. Since May 2009, he has been in chronic and substantial pain from the knee injury; the condition significantly affects his daily activities of standing and walking; and the failure to treat his condition with pain medication or other means causes him to suffer continued pain. These allegations suffice to meet the objective showing that Plaintiff had a serious medical condition. The remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various defendants.

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837. The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or

techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

A delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")). The Seventh Circuit has also found that an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective" (citing *Estelle*, 429 U.S. at 104 n.10) and noting that "repeated, long-term negligent treatment" could amount to deliberate indifference).

**Defendant Kelly**

Plaintiff alleges that Defendant Kelly, a lay person, denied Plaintiff's request to be sent to the Health Care Unit for medical attention immediately after his knee injury. Plaintiff told

Page 6 of 12

Defendant Kelly he was in pain, and Plaintiff had been carried into the building by two other inmates because he could not walk on his own, indicating an injury obvious enough to put a lay person on notice of its seriousness. Defendant Kelly sent Plaintiff to his cell, and told him he should not have been playing soccer. As a result of Defendant Kelly's refusal to allow Plaintiff to see medical staff, Plaintiff had to wait for three days to get any medical attention. At this stage of the litigation, the deliberate indifference claim against Defendant Kelly cannot be dismissed.

**Defendant Peek**

Plaintiff first received medical attention three days after putting in a sick call request, when he was taken to Defendant Peek, an LPN. Plaintiff's knee was badly swollen, he told her about his severe pain, and he asked to see the doctor. Plaintiff alleges that Defendant Peek told him he was faking his injury, nothing was wrong, and all Plaintiff needed was ice. She gave him no pain medication. Plaintiff continued to suffer pain for the next three weeks until he was allowed to see the doctor. Whether or not Defendant Peek's failure to provide further treatment contributed to any worsening of Plaintiff's condition cannot be determined at this stage. The claim against Defendant Peek also cannot be dismissed at this time.

**Defendant Dr. Obadina**

When he saw Plaintiff on May 19, 2009, three weeks after Plaintiff's injury, Defendant Dr. Obadina gave Plaintiff 24 pain pills, a low bunk/low gallery permit, and ordered an x-ray. Plaintiff acquired crutches at some point, but the complaint is not clear as to when or from whom. It took another three weeks for Plaintiff to be called back to Defendant Obadina to get the x-ray results. At that time, Defendant Obadina took away Plaintiff's crutches, telling Plaintiff there was nothing wrong with him. Plaintiff explained his intense pain, difficulty walking and standing, and

requested an MRI, which Defendant Obadina refused. He gave Plaintiff 24 more pain pills and extended his low bunk/low gallery permit for one year. Plaintiff continued to send request slips to see Defendant Obadina again, but never got a response; ten more months went by before Plaintiff was again seen by a prison doctor.

Although Defendant Obadina provided some treatment to Plaintiff, it was so minimal and short in duration that it amounted to almost no treatment, given Plaintiff's allegations of ongoing unrelieved pain and difficulty walking and standing. Plaintiff has sufficiently alleged deliberate indifference on the part of Defendant Obadina to prevent dismissal at this stage.

**Defendant Dr. Wahl**

Plaintiff first saw Defendant Dr. Wahl in April 2010, for his continued trouble standing and walking, and ongoing pain which caused him to lose sleep. Defendant Wahl sent him to a physical therapist but denied an MRI. Plaintiff then saw Dr. Shepherd (who is not a defendant), who sent Plaintiff to Carbondale Memorial Hospital for an MRI on April 7, 2010. The MRI showed a tear in the medial meniscus, probable tear of the anterior cruciate ligament, osteoarthritis of the patella, fluid and swelling. Defendant Wahl extended Plaintiff's permits for low bunk/low gallery and slow walk, and his Physically Challenged Pass. She continued him in physical therapy, but gave no other treatment. Plaintiff alleges he has continued to experience unrelieved pain as a result of Defendant Wahl's inadequate treatment. Although Plaintiff cannot dictate what treatment he should receive, and mere negligence or malpractice does not amount to a constitutional claim, Defendant Wahl's failure to provide any treatment to alleviate Plaintiff's serious pain over several months prevents the dismissal of this claim at this stage.

**Defendant Dr. Gary**

Plaintiff faults Defendant Dr. Gary for delaying effective treatment by merely ordering a trial period with a knee immobilizer, which Plaintiff apparently never received due to the refusal of security staff to allow this device. Plaintiff notes that Defendant Gary is employed by Memorial Hospital of Carbondale, and is not employed by the prison or by the Illinois Department of Corrections. As such, Defendant Gary is not a state actor and is not subject to suit under 42 U.S.C. § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.,* 311 F.3d 851, 852-53 (7th Cir. 2003). The claim against Defendant Gary must therefore be dismissed without prejudice to Plaintiff bringing a complaint against him in state court, should he so desire.

**Defendant Wexford Health Sources, Inc.**

Plaintiff alleges that Defendant Wexford Health Sources has a:

> custom, policy or practice under which it regularly fails (a) to provide adequate and necessary medical care and treatment to inmates in the IDOC[;] (b) to adequately train it's [sic] agents and/or employees to provide necessary medical treatment to inmates in the IDOC; and (c) to develope [sic] and implement appropriate treatment protocals [sic] to be follow[ed] by it's [sic] employees.

(Doc. 1, p. 8). Plaintiff appears to be alleging that the failure of Defendants Peek, Obadina, and Wahl to adequately treat his knee injury and ongoing pain is a result of the policies and practices of their employer, Defendant Wexford Health Sources. If this allegation proves to be true, and if he can show that any of the named defendants/employees of Wexford were deliberately indifferent to his medical needs, Plaintiff may be able to establish deliberate indifference on the part of Defendant Wexford Health Sources. *See Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a

policy or practice that caused the violation). Accordingly, the claim against Defendant Wexford Health Sources cannot be dismissed at this point in the litigation.

**Defendant Davis**

Plaintiff fails to state a claim against Defendant Davis, the prison warden, for deliberate indifference to his medical needs, as he had no direct role in the provision of medical care to Plaintiff, and there is no supervisory liability in a § 1983 action. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). Plaintiff's direct communication to Defendant Davis by way of his emergency grievances does not change this basic rule or create any liability for Defendant Davis' failure to personally remedy his problem. *Burks*, 555 F.3d at 595.

Plaintiff's contention that Defendant Davis intentionally delayed his medical treatment by denying his emergency grievances and requiring him to follow the normal grievance procedure is also without merit. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). In addition, Plaintiff has no constitutional right to have his grievances resolved in his favor. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired).

For these reasons, the claims against Defendant Davis must be dismissed with prejudice.

**Disposition**

IT IS HEREBY ORDERED that Plaintiff has failed to state a constitutional claim against Defendants **GARY** and **DAVIS**. Defendant **GARY** is **DISMISSED** from this action without prejudice to a claim against him being brought in state court. Defendant **DAVIS** is **DISMISSED** from this action with prejudice.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendants **KELLY, PEEK, OBADINA, WAHL** and **WEXFORD HEALTH SOURCES, INC.,** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

IT IS FURTHER ORDERED that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document

submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: 6/16/2011

s/ MICHAEL J. REAGAN
_____
**U.S. District Judge**