IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAME GARA, | ) |
|       Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 10−cv−0769−MJR−SCW |
| C/O ROBERT KELLEY, TRACY PEEK, DR. WAHL, WEXFORD HEALTH SOURCES INC., | ) ) ) ) |
|       Defendants. | ) ) |

# REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

      This § 1983 Eighth Amendment case, in which *pro se* Plaintiff Rame Gara has alleged the defendants acted with deliberate indifference toward his knee injury, is before the Court on Defendant Robert Kelley's Motion for Summary Judgment (Dkt. 53). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Gara exhausted his administrative remedies before filing suit. For the following reasons, it is **RECOMMENDED** that Defendant Kelley's motion (Dkt. 53) be **GRANTED,** and that Defendant Kelley be **DISMISSED without prejudice.**

### Procedural History

      Gara, an inmate at the Illinois Department of Corrections' ("IDOC") Pinckneyville Correctional Center, sued six individual defendants and Wexford Health Sources, Inc. ("Wexford," Pinckneyville's medical contractor) in October 2010. According to the Complaint, Gara was seriously hurt during a May 2009 soccer game in the prison yard. Each defendant, Gara alleges, was deliberately indifferent — in violation of the Eighth Amendment — to his badly swollen knee,

which was eventually diagnosed as having (among other problems) a tear in the medial meniscus and a probable ACL tear.

In June 2011, District Judge Reagan performed a preliminary review of Gara's Complaint pursuant to 28 U.S.C. § 1915A. (Dkt. 9). Pursuant to Judge Reagan's threshold order, two individual defendants were dismissed. (Dkt. 9). Pursuant to Federal Rule of Civil Procedure 4(m), another individual defendant was terminated from the case because he was not served. Remaining as Defendants, then, are Wexford and three individual defendants, including Robert Kelley, the sole movant here.[1]

On December 1, 2011, Kelley moved for summary judgment on the theory that Gara had not exhausted his administrative remedies as required by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). Gara filed his response on January 17, 2012, and the motion fully ripened when Kelley's reply brief was filed on February 7, 2012. Having thoroughly reviewed the briefs and the entire record, the undersigned judge **RECOMMENDS** as follows.

LEGAL STANDARDS

1. *Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[2] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).**

---

[1] For accuracy's sake, the Clerk is DIRECTED to terminate Defendant "C/O Kelly" — a misspelling leftover from the Complaint — and add "Robert Kelley" to the docket.
[2] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. **Sow v. Fortville Police Dept., 636 F.3d 293, 300 (7th Cir. 2011)**.

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. **Anderson, 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010). Accord Anderson, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

Finally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).** The Court considers the facts in a light most favorable to the non-movant — here, Gara. **Srail v. Vill. of Lisle, 588 F.3d 940, 948 (7th Cir. 2009).**

### 2. PLRA's Exhaustion Requirement

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as available are exhausted.* **42 U.S.C. § 1997e(a) (emphasis added).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

Where failure to exhaust administrative remedies has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.** When — as here — purely legal issues (and undisputed facts) control the administrative remedies issue, no hearing is needed. **Doss v. Gilkey, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).**

The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)**. When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. **Id.** If prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court turns to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

### 3. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Gara was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. **Id**. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).**

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state that "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

## FACTUAL BACKGROUND & GARA'S GRIEVANCES

In early May 2009, Plaintiff Gara was playing soccer on the yard when he injured his knee. According to the Complaint, Kelley was the wing officer when Gara's teammates carried him back to the housing unit. (Dkt. 1, 5). Kelley, rather than send Gara to the Health Care Unit ("HCU"), made him go directly to his cell. (Dkt. 1, 5). Getting adequate treatment for his knee took almost a year. According to the IDOC's Chairperson in the Office of Inmate Issues, Gara filed only two grievances regarding medical treatment (or lack thereof) for his knee. (Dkt. 53-2, 4).

In the first, dated April 6, 2010 (the "April grievance"), Gara asks for adequate medical treatment and an administrative review regarding the delay in his treatment.[3] (Dkt. 53-3, 4).

---

[3] Rather than first grieving to the grievance officer, an inmate may file an emergency grievance directly to the CAO, who determines whether "there is a substantial risk of imminent personal injury or other serious or irreparable harm." **20 Ill. Admin. Code § 504.840(a).** Once the CAO has informed the inmate of his decision, the inmate may appeal that decision to the ARB or start the process over through normal channels. *See* Ill. Admin. Code § 504.850(g). Here, it appears Gara filed the April grievance as an emergency first — the CAO concluded "an emergency is not substantiated" on April 14, 2010, the day before the Grievance Counselor received the form. (Dkt. 53-3, 4).

In the April grievance, Gara describes his encounter with Kelley: Gara "was out on the yard playing soccer with other inmates when he fell and twisted his knee. When back at the Housing Unit 3, [he] reported this to Officer Kelly [sic] who told [him] to put in a nurse sick call slip (which takes a minimal [sic] of 3 days for a reply)." (Dkt. 53-3, 5).

Gara's second grievance, dated May 6, 2010 (the "May grievance") makes broad complaints similar to those found in the April grievance: that for a year, Gara had made many attempts to see a doctor but continued to receive inadequate treatment for his knee. (*See* Dkt. 53-3, 6). The May grievance alleges that the "medical staff" delayed treating Gara, but makes no mention of Defendant Kelley or other prison staff, named or unnamed. (Dkt. 53-3, 7). Gara's counselor received the April grievance on April 15, 2010, and the May grievance on May 10, 2010.

Rather than dealing with each grievance individually, the counselor and acting HCU chief combined the grievances and concluded that Gara had received appropriate care. (Dkt. 53-3, 4, 6, 8–9). According to date stamps on both grievances and on her report, Grievance Officer Deen received the combined April and May grievances on June 24, 2012. Deen found that Gara's medical concerns were currently being addressed, and that his grievance should be denied. (Dkt. 53-3, 3). The CAO concurred on July 12, and the grievances were returned to Gara. (Dkt. 53-3, 3).

Gara — who included both the April and May grievances in his appeal — took his case to the ARB in late July. (*See* Dkt. 53-3, 2). The ARB reviewed the May grievance and denied it because it was "appropriately addressed by the institutional administration." (Dkt. 53-3, 2). In pertinent part, the ARB's decision notes: "This office notes that your April 6, 2010 grievance, citing non-treatment for a May 2009 knee injury, is beyond timeframes and will not be addressed." (Dkt. 53-3, 2). In other words, the ARB denied Gara's April 6 grievance — the only grievance that mentioned Defendant Kelley — as untimely.

## CONCLUSIONS OF LAW

The instant case presents a question of law that has yet to come squarely before the Seventh Circuit Court of Appeals: whether an administrative remedy is unexhausted where institution-level officials deny a prisoner's grievance on the merits, but the departmental appeal is unequivocally denied on procedural grounds.  A prisoner, of course, must take all steps required by the prison's grievance system to properly exhaust his administrative remedies.  **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002).**  If a prisoner does not follow the prison's grievance procedures, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely exhausted."  **Dole v. Chandler, 438 F.3d 804, 808 (7th Cir. 2006).**  If prison officials, on the other hand, do not explicitly rely on a prisoner's procedural shortcomings, and instead address an inmate's grievance on the merits, the grievance has served its function and the failure to exhaust defense fails.  **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).**

In *Maddox*, for example, an untimely prisoner grievance was "rejected on the merits at every stage of review" with no indication from officials at the prison or at the IDOC that the grievance was procedurally deficient.  ***Id.* at 721.  See also Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004) (untimely grievance was exhausted when "the state's administrative apparatus did not reject [the prisoner plaintiff's] grievance as untimely; it accepted and denied the grievance on the merits."); Glick v. Walker, 385 F. App'x 579, 582–83 (7th Cir. 2010) (grievances held exhausted when they were denied on the merits both at the prison and by the ARB).**  In *Conyers v. Abitz*, a prisoner's untimely grievance was held to be exhausted when the warden dismissed it on the merits and IDOC officials did the same — even though the IDOC officials also made an "ambiguous secondary observation that it was untimely."  **Conyers, 416 F.3d 580, 585 (7th Cir. 2005).**  It is clear, therefore, that an untimely

grievance is unexhausted when it is rejected as untimely at every level within the state system (*Dole*), but is exhausted when officials at the institutional level and at the ARB reject it solely on the merits (*Maddox* and *Riccardo*) or when institutional and ARB officials reject it on the merits but the ARB ambiguously notes its untimeliness (*Conyers*).

But this is a middle case. It is beyond dispute that, as it pertains to Kelley, the April grievance — filed almost a year after Gara's encounter with Kelley — was untimely. **See 20 Ill. Admin Code § 504.810(a).** Officials at Pinckneyville, however, rejected the April grievance on the merits, which mitigates toward exhaustion. **See *Riccardo*, 375 F.3d at 524 ("When a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.").** But then the ARB refused to address Gara's April grievance solely because it was untimely filed at Pinckneyville — a decision which mitigates toward finding Gara's grievance unexhausted. **See *Dole*, 438 F.3d at 808 (when a prisoner fails to properly use the grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely exhausted"); *Riccardo*, 416 F.3d at 584 ("We have held that a prison grievance rejected solely on the basis of untimeliness will not fulfill the exhaustion requirement.") (citing *Pozo*, 286 F.3d at 1025).**

District courts in this circuit have travelled divergent paths when confronted with the issue. In *Escobedo v. Miller*, the ARB denied a prisoner's appeal because the underlying grievance was filed out of time, even though officials at the prison had handled the grievance on the merits. **Escobedo v. Miller, No. 08-2017, 2009 WL 2605260, at *5 (C.D. Ill. Aug. 25, 2009).** The court held the PLRA's exhaustion requirement was satisfied. ***Id.*** But the same circumstances led to the opposite result in *Sylvester v. Chandler*, where the court granted

9

summary judgment against a prisoner whose grievance was first found unsubstantiated by a grievance officer, then subsequently denied by the ARB. *Sylvester v. Chandler*, No. 07-C-50050, 2010 WL 3420385, at *2–4 (N.D. Ill. Aug. 27, 2010).

The better course of action here is to follow the lead of the *Sylvester* district court, and hold that the ARB's denial of an inmate's grievance on purely procedural grounds means that "the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust." *Pavey*, 544 F.3d at 742. As a starting point, it is worth noting that the instant case is distinguishable from *Maddox*, *Riccardo* and *Conyers*, where untimely grievances satisfied the exhaustion requirement. The Seventh Circuit, in those cases, focused on one of the grievance process' purposes: inviting prison administrators to take corrective action before a prisoner files suit. But in each of those cases, the entire state administrative apparatus — from the prison counselor to the final rung of the state administrative process — decided a procedurally deficient grievance exclusively on the merits. (In *Conyers*, of course, the state-level prison officials included an ambiguous secondary observation that the grievance was untimely).

That is not the case here, where the denial of Gara's April grievance on procedural grounds was explicit: the ARB explicitly informed Gara that his "April 6, 2010 grievance, citing non-treatment for a May 2009 knee injury, [was] beyond timeframes and [would] not be addressed." (Dkt. 53-3, p. 2). **See *Maddox*, 655 F.3d at 722 ("[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators *explicitly relied on that shortcoming* (quoting *Conyers*, 416 F.3d at 585) (emphasis added).** So unlike *Maddox*, *Riccardo* and *Conyers*, here administrators (though at the state level, not the institution level) unambiguously asserted

untimeliness as grounds for denying Gara's grievance well before the case made its way to federal court.

It serves the PLRA's purposes to incorporate Illinois' entire exhaustion process, rather than just institution-level officials, into the scope of the "prison administrative authority" that "can refuse to hear the case." ***Dole*, 438 F.3d at 808.** The entire state apparatus, from the grievance counselor to the ARB and Director, should have its chance to address a prisoner's complaints — either on the merits or on procedural grounds. One policy behind the grievance process is to allow officials a chance to address a prisoner's concerns before incurring "the hassle and expense of litigation." ***Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005).** The ARB should have the same chance as institution-level officials to address any potential policy changes or internal problems before litigation arises. If a prisoner's grievance were so untimely as to prevent a meaningful chance for the departmental officials to examine alleged problems from the distant past, the ARB should have an opportunity to deny that grievance as untimely and hold the prisoner to that decision. *See **Woodford v. Ngo*, 548 U.S. 81, 95 (2006) ("The benefits of exhaustion can be realized only if the prison grievance *system* is given a fair opportunity to consider the grievance.") (emphasis added).** Otherwise the ARB would lose meaningful opportunity for oversight because it would be limited to using stale recollections and potentially-shoddy evidence to make its policy decisions. *See id.* **("When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.").** Such a rule also avoids the further hair-splitting that would necessarily follow: would a state defendant, for example, waive the exhaustion defense if a counselor denies a prisoner's grievance on the merits but the grievance officer denies it as untimely? Or if the warden denies

as untimely a grievance that the grievance officer has denied as dilatory? *See Woodford*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no *adjudicative system* can function effectively without imposing some orderly structure on the course of its proceedings.") (emphasis added).

It is the easier rule — and more importantly, the rule that aligns with the PLRA's balance between state administrative law and federal court power — to allow the entire state prison system a chance to identify the procedural defects of a prisoner's grievance and to rely on those defects in choosing not to face a decision on the merits in federal court. *See Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) (The PLRA "gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which courts must respect if a defendant chooses to invoke it.") (emphasis in original). Inviting pre-lawsuit corrective action from the prison system is not the only purpose of the PLRA. The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits" and "eliminate unwarranted federal-court interference with the administration of prisons." *Woodford*, 548 U.S. at 93. It would be a strange result, in light of the latter purpose, for a federal court to take up a case where the state department tasked with administering Illinois' prisons — including developing and implementing the statewide grievance process — found that a prisoner's grievance was procedurally unsound. The PLRA leaves the grievance process to the states, and federal courts should respect the state's decision if it properly decides a prisoner has not complied with its grievance process.[4]

---

[4] The Court notes Mr. Gara's concern that permitting the ARB to be the first administrative level to deny a grievance as untimely would limit a prisoner's ability to appeal the untimeliness decision within the state administrative process. But were the ARB ever to *wrongfully* conclude that a prisoner's grievance would be untimely, a prisoner could still have his day in court, since the state cannot hide behind its own mistakes in the exhaustion process. *See Dole*, 438 F.3d at 811

In short, the Court holds that if a prisoner's grievance is properly denied solely on procedural grounds at the highest level of the state's administrative remedy process, the prisoner has not exhausted and may not proceed in federal court. *See Ford*, 362 F.3d at 397 (**"Just as courts may dismiss suits for failure to cooperate, so administrative bodies may dismiss grievances for lack of cooperation; in either case this procedural default blocks later attempts to litigate the merits."**). Therefore, Gara has not exhausted his administrative remedies as it pertains to Kelley. Gara's allegations against Kelley are limited to a discrete encounter in May 2009. The only grievance in which Gara names Kelley — or even hints at unconstitutional behavior by anyone other than prison medical staff — is the April grievance, filed almost a year after Gara's encounter with Kelley. Gara had 60 days to grieve the incident to the grievance officer; he failed to do so. The ARB, noting Gara's untimeliness, rejected the contents of the April 2010 grievance on strictly procedural grounds.

As discussed above, that rejection is sufficient for the Court to find that Gara did not exhaust his administrative remedies as they pertain to Kelley, and is thereby sufficient to keep Defendant Kelley out of court. The undersigned therefore **RECOMMENDS** that Kelley's Motion for Summary Judgment (Dkt. 53) be **GRANTED**, and that Gara's claims against him be **DISMISSED without prejudice.** *See Ford*, 362 F.3d at 401 ("We . . . hold that *all* dismissals under [42 U.S.C.] § 1997e(a) should be without prejudice.") (emphasis in original).

CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Defendant Kelley's Motion for Summary Judgment (Dkt. 53) be **GRANTED,** and that Plaintiff's claims against Defendant Kelley be **DISMISSED without prejudice.**

---

(where a complaint remained unresolved through no fault of the prisoner, it "cannot be said that [Plaintiff] failed to exhaust his remedies.").

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation within **fourteen (14) days** of being served with a copy. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, <u>**objections to this Report and Recommendation must be filed on or before July 30, 2012.**</u>

**IT IS SO ORDERED.**
**DATE: July 13, 2012**                                             */s/ Stephen C. Williams*
                                                                    **STEPHEN C. WILLIAMS**
                                                                    United States Magistrate Judge